THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:09-CR-00348-FL
No. 5:13-CV-00240-FL

| | |
|---|---|
| MARY ROSE WRIGHT, ) | |
| ) | |
| Petitioner, ) | **MEMORANDUM AND** |
| v. ) | **RECOMMENDATION** |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

This matter comes before this court on the government's motion to dismiss [DE-103] Petitioner Mary Rose Wright's ("Wright" or "Petitioner") motion under 28 U.S.C. § 2255 to vacate, set aside, or correct her sentence [DE-95] and a first [DE-95-1], second [DE-101],[1] and third [DE-116] addendum thereto. Petitioner responded to the government's motion [DE-110], and the motions are ripe for review. These motions were referred to the undersigned and are considered here as a recommendation to the District Court. See 28 U.S.C. § 636(b)(1)(B); Fed. R. Crim. P. 59(b)(1). For the reasons stated below, it is recommended that the government's motion to dismiss be allowed and Petitioner's motion be denied.

## I. BACKGROUND

On November 23, 2009, Wright was charged in a two count criminal information with (1) conspiracy to commit mail fraud, wire fraud, and bank fraud, in violation of 18 U.S.C. § 371; and (2) wire fraud, in violation of 18 U.S.C. § 1343. [DE-4]. The charges stemmed from Wright's involvement in mortgage fraud and check cashing schemes. Presentence Report ("PSR") [DE-59]

---

[1] Petitioner's second addendum [DE-101] to her petition was unsigned and later refiled to include a signature page [DE-106]. The documents are identical in substance and, for ease of reference, this memorandum and recommendation refers to the first filed document.

at 3 ¶ 4. Wright was initially represented by attorney A. Robert Bell, III ("Bell"). [DE-3]. On January 8, 2010, Wright waived indictment and, with a plea agreement, entered a guilty plea to a criminal information. [DE-9, -12]. Wright's sentencing was initially set for April 13, 2010 [DE-17], but was continued several times [DE-19, -22, -25, -28, -31, -34, -37, -40]. On July 18, 2011, Wright's counsel was permitted to withdraw based upon the court's finding that there had been an "irretrievable breakdown in the professional relationship between Defendant . . . and counsel," [DE-43], and new counsel, Mary Jude Darrow ("Darrow"), entered an appearance on July 20, 2011 [DE-44]. On December 6, 2011, the government filed a motion for downward departure pursuant to U.S.S.G. § 5K1.1 [DE-54], and on December 8, 2011, Defendant filed a sentencing memorandum [DE-55]. On December 12, 2011, Senior Judge Howard recused himself from the case, which was reassigned to Judge Flanagan. [DE-57, -58].

On April 2, 2012, Wright was sentenced to 52 months' imprisonment on Count 1 and 52 months' imprisonment on Count 2, to be served concurrently, three years' supervised release on Count 1, and three years' supervised release on Count 2, to run concurrently, and restitution of $1,416,022.00. [DE-62, -68]. On April 3, 2012, Defendant filed a notice of appeal [DE-66], which was voluntarily dismissed on May 17, 2012 [DE-72]. On January 18, 2013, Defendant filed a motion for resentencing and to appoint counsel [DE-83], which was denied. On March 6, 2013, Defendant filed a motion for extension of time to file a § 2255 motion [DE-88], which was denied [DE-92]. On April 2, 2013, Defendant filed the instant motion to vacate under § 2255 [DE-95] with attached addendum [DE-95-1] and later filed a second and third addendum thereto [DE-101, -116]. The government filed a motion to dismiss. [DE-103].

## II. LEGAL STANDARDS

### A. Rule 12(b)(6)

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint, not to resolve conflicts of fact or to decide the merits of the action. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999). However, the "'[f]actual allegations must be enough to raise a right to relief above the speculative level' and have 'enough facts to state a claim to relief that is plausible on its face.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (citations omitted). In considering a motion to dismiss, the court assumes the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 872 (4th Cir. 1989) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). Moreover, a court "need not accept the legal conclusions drawn from the facts" nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

### B. 28 U.S.C. § 2255

After conviction and exhaustion, or waiver, of any right to appeal, courts and the public can

3

presume that a defendant stands fairly and finally convicted. *See United States v. Frady*, 456 U.S. 152, 164-65 (1982). However, 28 U.S.C. § 2255 provides a means for a defendant convicted of a federal offense to collaterally attack a conviction or sentence on four grounds: (1) the sentence was imposed in violation of the Constitution or the laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). "[T]hus § 2255 relief is not limited to constitutional error in a conviction or sentence." *United States v. Mikalajunas*, 186 F.3d 490, 495 (4th Cir. 1999). However, where a petition seeks relief from a nonconstitutional error, "the scope of review . . . is more limited than that of constitutional error; a nonconstitutional error does not provide a basis for collateral attack unless it involves a fundamental defect which inherently results in a complete miscarriage of justice, or is inconsistent with the rudimentary demands of fair procedure." *Id.* "In a § 2255 proceeding, the burden of proof is on petitioner to establish his claim by a preponderance of the evidence." *Toribio-Ascencio v. United States*, Nos. 7:05-CR-00097-FL, 7:08-CV-211-FL, 2010 WL 4484447, at *1 (E.D.N.C. Oct. 25, 2010) (citing *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958)).

### III. DISCUSSION

Wright seeks relief under § 2255, alleging (1) ineffective assistance of counsel based on the alleged failure to fully discuss and explain the plea agreement and failure to object to the presentence report, Pet'r's Mot. [DE-95] at 4-5; (2) ineffective assistance of counsel and prosecutorial error based on the alleged miscalculation of loss and restitution, *id.* at 6-9; (3) prosecutorial error based on Rule 35, *id.* at 11-12; (4) prosecutorial error based on alleged failure to remove behavior dates, *id.* at 13; (5) entitlement to sentence reduction for post-sentencing rehabilitation programming,

4

Pet'r's First Addendum [DE-95-1] at 4-17; (6) ineffective assistance of counsel based on alleged error in sentence calculation, Pet'r's Second Addendum [DE-101] at 1; Pet'r's Third Addendum [DE-116] at 2-6; and (7) ineffective assistance of counsel based on alleged failure to discuss and verify the PSR, Pet'r's Second Addendum at 2-3. The government contends that the sentencing related claims should be dismissed based on procedural default and the appeal waiver in Petitioner's written plea agreement and that Petitioner has failed to carry her burden on the ineffective assistance and prosecutorial misconduct claims. Gov't's Mem. [DE-104] at 2-8.

A.  **Ineffective Assistance of Counsel Claims**

To demonstrate ineffective assistance of counsel, a petitioner must show that counsel's representation was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish deficient performance, the petitioner must overcome a "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). As to the prejudice component, a petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. It is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *See Strickland*, 466 U.S. at 697 (explaining "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies" or "to address both components of the inquiry if the defendant makes an insufficient showing on one").

5

Wright contends her counsel provided ineffective assistance in three ways:

1) Failing to fully discuss and explain the plea agreement;

2) Failing to discuss and verify with Petitioner or object to the PSR; and

3) Failing to correctly calculate Petitioner's sentence.

Pet'r's Mot. [DE-95] at 4-5; Pet'r's Second Addendum [DE-101] at 2-3.

### 1. The Plea Agreement

Wright asserts that attorney Bell failed to discuss and explain all aspects of the plea agreement, specifically that Bell did not explain what an information plea consisted of, which caused Wright "to answer yes to a Rule 11;" did not explain what the conspiracy charge consisted of; and should have instructed Wright to plead to a lesser charge where no co-conspirators had been indicted. Pet'r's Mot. at 4. Wright also contends that she did not understand that if she pled guilty, the government would not have to prove relevant conduct regarding the twelve loans considered in the PSR. *Id.* at 5.

First, Wright's assertion here that she did not understand her plea to a criminal information and the conspiracy charge is contradicted by her sworn testimony at arraignment. During the arraignment, the magistrate judge inquired of Wright as to whether she had received the criminal information and whether Bell had read and reviewed the criminal information with Wright, to which she replied in the affirmative. Arraignment Tr. [DE-108] at 12:18-13:4. Wright also acknowledged that she understood the charges and waived the reading of the criminal information. *Id.* at 13:5-10. *See Carmichael v. United States*, No. 5:08-CR-229-FL-2, 2014 WL 495437, at *2 (E.D.N.C. Feb. 6, 2014) ("'In the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an

6

evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements.'") (quoting *United States v. Lemaster*, 403 F.3d 216, 221-22 (4th Cir. 2005)). After informing Wright as to the maximum punishment she might receive, the magistrate judge again asked whether she understood the charges in the criminal information and Wright said she did. *Id.* at 13:20-15:1. The magistrate judge then explained to Wright that the charges against her had been brought by criminal information, but that she had a right to indictment by the Grand Jury and further explained the consequences of proceeding by criminal information:

> Q    All right. Now, Ms. Wright, the charges pending against you have been brought by the U.S. Attorney by the filing of a Criminal Information. Because both charges in the Criminal Information are felonies, you have the absolute right to require that the United States Attorney obtain a true Bill of Indictment against you from the Grand Jury. So you have a Constitutional right to require that the U.S. Attorney obtain a true Bill of Indictment against you. But you can waive that right to indictment, and consent to proceeding on the Criminal Information, if you desire.
>
> Now, this is important, Ms. Wright. If you elect not to waive your right, your Constitutional right to indictment this morning, then the case can go no further against you today. In fact, you're free to walk out of this courtroom. But the Government would be free to present its case to the Grand Jury and seek to have the Grand Jury return a true Bill of Indictment against you.
>
> Now, the Grand Jury is composed of at least sixteen but not more than twenty-three persons, and at least twelve of those grand jurors would have to find probable cause to believe you committed the offense or offenses with which you're charge before they could return a true Bill of Indictment.
>
> Now, Ms. Wright, if the Government were forced to present its case to the Grand Jury -- and again, at least twelve of those grand jurors would have to find probable cause before they could return a true Bill of Indictment. Now, Ms. Wright, as I was saying, if the Government was forced to present its case to the Grand Jury, the Grand Jury might or it might not return a true Bill of Indictment against you. No one can say for sure, Ms. Wright, what the Grand Jury would do were they faced with your case. But I can say for sure that if the Grand Jury -- I'm sorry, I can say for sure that if you waive your right to indictment this morning, and consent to proceeding on the Criminal Information, that the case will proceed against you just as if you had been indic[]ted.

7

>    Now, Ms. Wright, have you discussed waiving your right to indictment by the Grand Jury with Mr. Bell, your attorney?
>
> A  Yes, sir.
>
> Q  Do you understand that if you desire, you have the absolute right to require that the U.S. Attorney obtain a true Bill of Indictment against you?
>
> A  Yes, sir.
>
> . . . .
>
> Q  All right. Ms. Wright, would you like to waive your right to indictment by the Grand Jury, and consent to proceeding on to arraignment based on the Criminal Information?
>
> A  Yes, sir.

*Id.* 15:2-17:9. Wright then executed a waiver of indictment. *Id.* 17:22-18:3. The magistrate judge then offered again to read the charges to Wright, but she indicated that she understood them. *Id.* 18:7-11. Next the magistrate judge inquired as to whether Wright had an opportunity to "thoroughly read and review the plea agreement with Bell before she signed it, and Wright responded affirmatively. *Id.* 18:12-25. Wright also acknowledged that she understood all the "terms, language, words and phrases" in the plea agreement. *Id.* 19:1-4. The magistrate judge inquired as to whether Bell discussed with Wright the appeal waiver, and she said that he did and that she understood. *Id.* 20:3-11. When asked if Wright needed additional time to "think about [her] plea or discuss any aspect of [her] case with Mr. Bell," she declined. *Id.* 20:25-21:3.

The Rule 11 colloquy reveals that Bell discussed both the criminal information and plea agreement with Wright and that she understood the import of these documents. *See Mann v. United States*, No. 5:08-CR-296-D, 2013 WL 5356878, at *4 (E.D.N.C. Sept. 24, 2013) ("The court must dismiss claims that rely on allegations that contradict sworn statements at the Rule 11 hearing.")

8

(citing *Lemaster*, 403 F.3d at 221-22). Furthermore, with respect to Wright's assertion that counsel failed to inform her regarding the relevant conduct that would be considered at sentencing, such errors do no constitute ineffective assistance where the petitioner, as here, was informed of the statutory maximum punishment and advised that the court is not bound by any agreement with the government. Arraignment Tr. 13:10-15:1; 20:12-21. *See Johnson v. United States*, No. 5:09-CR-00307-FL-1, 2013 WL 5570951, at *4 (E.D.N.C. Oct. 9, 2013) (rejecting claim that counsel was ineffective because he failed to inform petitioner of the relevant conduct that would be considered in sentencing), *appeal dismissed*, No. 13-7752, 2014 WL 1664290 (4th Cir. Apr. 28, 2014). Thus, Wright has failed to show that counsel was deficient in explaining the criminal information or plea agreement. Alternatively, the Rule 11 hearing served to correct any earlier misinformation provided by counsel. *See United States v. Lambey*, 974 F.2d 1389, 1395 (4th Cir. 1992) ("[I]f the information given by the court at the Rule 11 hearing corrects or clarifies the earlier erroneous information given by the defendant's attorney and the defendant admits to understanding the court's advice, the criminal justice system must be able to rely on the subsequent dialogue between the court and defendant."). Finally, Wright fails to make any allegation with respect to prejudice and, thus, has failed to satisfy *Strickland* in this regard. 466 U.S. at 694.

### 2.    The PSR

Wright asserts that Bell failed to file objections to the PSR, that Darrow failed to discuss and verify the PSR with Petitioner, and that the loss and restitution amounts in the PSR are flawed. Pet'r's Mot. at 4-5, 7-8; Pet'r's Second Addendum at 2-3. Specifically, Wright contends that Darrow did not "verify" the PSR, because Darrow told Wright she was facing 30 months based on one property, as opposed to the 52 months she received at sentencing based on several properties, and

did not review the "calculation sheet of loans" that was presented at sentencing. Pet'r's Second Addendum at 2-3.

Rule 32 of the Federal Rules of Criminal Procedure requires that the court must at sentencing "verify that the defendant and the defendant's attorney have read and discussed the presentence report and any addendum to the report" and "must give to the defendant and an attorney for the government a written summary of--or summarize in camera--any information excluded from the presentence report under Rule 32(d)(3) on which the court will rely in sentencing, and give them a reasonable opportunity to comment on that information." Fed. R. Crim. P. 32(i)(1)(A), (B). At the sentencing hearing, the district judge asked Wright if she had read the PSR and whether she had enough time to talk to Darrow in order to be prepared for sentencing, and Wright answered both questions affirmatively. Sentencing Tr. [DE-117] at 2:12-17. Accordingly, Wright's assertions are contradicted by her sworn statements at sentencing, and the verification requirement of Rule 32 was satisfied by the court's inquiry at the sentencing hearing.[2]

Regarding the "calculation sheet of loans," which Wright contends Darrow failed to review with her, the information contained therein was not new to Wright or Darrow. An exhibit to Wright's response to the government's motion to dismiss indicates the government provided this

---

[2] It is also noteworthy that any argument the court erred in sentencing Wright was waived when she failed to pursue the alleged error on direct appeal and has shown no cause for her failure to do so. *See United States v. Bane*, 73 F.3d 358, 1995 WL 761099, at *2 (4th Cir. 1995) (finding "nonconstitutional claim is not cognizable under § 2255 because [petitioner] could have raised it on direct appeal, but did not" and that petitioner "has not demonstrated cause for his failure to raise this claim on direct appeal") (citing *Stone v. Powell*, 428 U.S. 465, 477 n.10 (1976); *United States v. Maybeck*, 23 F.3d 888, 891 (4th Cir.1994) (failure to make contemporaneous objection at trial requires the establishment of cause and prejudice in § 2255 proceeding); *United States v. Emanuel*, 869 F.2d 795, 796 (4th Cir.1989) (claim that sentencing court did not comply with Fed. R. Crim. P. 32 waived where not raised on direct appeal)).

10

information to Darrow on December 9, 2011. [DE-110-1] at 21-23. Moreover, the PSR indicated that the scheme in which Wright was involved resulted in at least twelve fraudulent mortgage loans totaling $4,070,000. PSR at 5 ¶ 9. However, the government and Wright stipulated in the plea agreement that Wright's sentence should be based upon a loss calculation of $1,000,000 to $2,500,000, Plea Agreement [DE-12] at 7 ¶ 5.b., and Wright's sentencing memorandum urged the court to utilize the stipulated amount at sentencing, Def.'s Sentencing Mem. [DE-55] at 4 ¶¶ 1-4. The court sentenced Wright based on a loss calculation of $1,416,022, which was within the range stipulated to by Wright and the government in the plea agreement. Sentencing Tr. 3:22-6:24. Thus, Wright suffered no prejudice by any failure of Darrow to review the calculation sheet with Wright. Finally, while Wright is correct that Bell submitted no objections to the PSR, *see* PSR at 14 (noting that no response to the PSR was received by defense counsel), Darrow did assert objections to the PSR on Wright's behalf by way of a sentencing memorandum, which was submitted to the court. [DE-55]. Accordingly, Wright has failed to show prejudice as a result of Bell's failure to object to the PSR.

Wright also contends that counsel was ineffective due to the fact that the loss and restitution calculations in the PSR were flawed. Wright reasons that to the extent the properties were sold for fair market value, there is no loss and that, according to the PSR, the North Carolina Commissioner of Banks was unable to determine the actual loss. Pet'r's Mot. at 7-9. Wright also points out that the PSR indicated a total loss could not be calculated, PSR at 4-5 ¶¶ 6-10. As explained above, Wright and the government stipulated in the plea agreement that Wright's sentence should be based upon a loss calculation of $1,000,000 to $2,500,000, Plea Agreement at 7 ¶ 5.b., and the court sentenced Wright accordingly, based on a loss of $1,416,022.00. Sentencing Tr. 3:22-6:24. Wright

11

testified at her arraignment that she had reviewed with her attorney and understood the terms of her plea agreement. Arraignment Tr. 18:18-19:4. Furthermore, the court adopted the actual loss amount as the restitution amount payable to the victims. Sentencing Tr. 7:20-8:11. *See United States v. Harvey*, 532 F.3d 326, 339 (4th Cir. 2008) (interpreting 18 U.S.C. § 3664 to require restitution be based on actual loss). Accordingly, counsel was not deficient in failing to challenge the loss calculation or restitution order.

### 3. Sentence Calculation

Wright contends that she received ineffective assistance respective to the calculation of her sentence, which is construed to assert that counsel was ineffective in failing to object to an allegedly erroneous sentence calculation. Pet'r's Second Addendum at 1. Specifically, Wright asserts that the two-level enhancement for abuse of position of public or private trust or use of special skill, U.S.S.G. § 3B1.3, and two-level enhancement for use of sophisticated means, U.S.S.G. § 2B1.1(b)(9)(c), were not warranted, *id.*, and that U.S.S.G. § 2B1.1(b)(15)(A) should have been applied rather than § 2B1.1(b)(14)(A), Pet'r's Third Addendum at 4. Finally, Wright contends she was not on probation at the time of the wrongful conduct and counsel should have objected to a two-point enhancement related thereto. *Id.* at 5.

With respect to the § 3B1.3 enhancement, Wright claims that she was simply a loan officer and that the abuse of position enhancement was meant for an "executive leader (such as mortgage broker)." Pet'r's Second Addendum at 1. As evidence, Wright provides a document from the Commissioner of Banks dated April 28, 2003, related to Wright's licensure as a loan officer. [DE-110-1] at 24-27. However, the criminal information, to which Wright pled guilty, states that Wright was "a mortgage broker, working for Fairway Mortgage." Crim. Information [DE-4] ¶¶ 9-10. The

12

court also inquired at sentencing as to whether Wright was a licensed mortgage broker, to which Darrow responded that she had been, but lost her license, and Wright made no attempt to correct her counsel. Sentencing Tr. 20:23-21:1. The commentary to § 3B1.3 indicates that the enhancement would apply to embezzlement by "a bank executive's fraudulent loan scheme," but not "an ordinary bank teller." U.S.S.G. § 3B1.3, cmt. n.1 (2010). Wright's position as a mortgage broker is more akin to the bank executive than the bank teller. Furthermore, the Fourth Circuit has determined that the skill possessed by a mortgage broker qualifies as a "special skill" for purposes of § 3B1.3. *See United States v. Longwell*, 410 F. App'x 684, 692 (4th Cir. 2011) ("While mortgage brokers may not endure the same level of training as a doctor, pilot, or lawyer, they certainly possess a skill not possessed by members of the general public which is obtained through training and licensing."). Thus, Wright has failed to demonstrate that counsel was ineffective in failing to object to the § 3B1.3 enhancement.

With respect to the § 2B1.1(b)(9)(C) enhancement, Wright argues that the mortgage company for which she worked was legitimate, reported income to the IRS, and was licensed with the Secretary of State. Pet'r's Second Addendum at 1. However, the definition of "sophisticated means" is not restricted to use of illegitimate business entities:

> For purposes of subsection (b)(9)(C), "sophisticated means" means especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense. For example, in a telemarketing scheme, locating the main office of the scheme in one jurisdiction but locating soliciting operations in another jurisdiction ordinarily indicates sophisticated means. Conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts also ordinarily indicates sophisticated means.

U.S.S.G. § 2B1.1(b)(9)(C), cmt. n.8 (2010). Furthermore, "each of a defendant's individual actions need not be sophisticated to warrant a sophisticated means enhancement." *United States v. Noel*, 502

13

F. App'x 284, 290 (4th Cir. 2012), *cert. denied*, 134 S. Ct. 366, 187 L. Ed. 2d 253 (2013). The court recognized at sentencing that Wright's conduct "presents a very involved scheme" consisting of home-builders, real estate appraisers, real estate attorneys, a paralegal, a mortgage broker, and numerous straw purchasers. Sentencing Tr. 2:18-3:15. Further, in response to the court's inquiry as to why Wright's co-conspirators remained unindicted, the government explained,

> As the Court is aware from the presentence report and the offense conduct, the number of players in that and in multiple states -- we have straw purchas[e]rs from Pennsylvania, from the Middle District, from the Western District, other states, and property and home-builders all over the district. So, it's a complex, very large, unwieldy mortgage-fraud scheme that each district is trying to get a handle on.

*Id.* 12:11-19. Therefore, Wright's contention that the sophisticated means enhancement was applied erroneously is meritless, and her counsel was not deficient for failing to object to the § 2B1.1(b)(9)(C) enhancement. *See Ford v. Polk*, No. 5:07-HC-2070-FL, 2008 WL 697462, at *11 (E.D.N.C. Mar. 14, 2008) ("Failure to raise a meritless claim does not fall below 'an objective standard of reasonableness.'") (citations omitted).

With respect to Wright's argument that the alleged conduct did not fall within U.S.S.G. § 2B1.1(b)(14)(A), but rather that § 2B1.1(b)(15)(A) should have been applied, both sections result in a two-level increase in the offense level for sentencing purposes. Thus, even assuming Wright is correct, she has failed to demonstrate prejudice resulting from counsel's failure to object. Furthermore, Wright's argument appears to be based on her assertion that the loans at issue were not held by an FDIC insured financial institution. Pet'r's Third Addendum at 4. However, the commentary to § 2B1.1 in the Sentencing Guidelines expressly provides that a "Financial institution" is not limited to those insured by the federal government. U.S.S.G. § 2B1.1, cmt. n.1 (2010). Accordingly, this argument lacks merit and counsel was not deficient in failing to make an objection

14

to the § 2B1.1(b)(14)(A) enhancement.

Finally, Wright contends that she was not on probation at the time of the wrongful conduct and counsel should have objected to a two-point enhancement related thereto. Pet'r's Third Addendum at 5. Wright's counsel did, in fact, raise this issue with the court in the sentencing memorandum, Def.'s Sentencing Mem. at 3 ¶ 9. Accordingly, the contention that counsel failed to object to this enhancement is meritless.

## B.    Prosecutorial Error

Wright alleges prosecutorial error based on the alleged miscalculation of loss and restitution, failure to bring a Rule 35 motion, and failure to remove behavior dates. Pet'r's Mot. at 6-13. "To prevail on a claim of prosecutorial misconduct, a defendant must show: (1) the prosecutor's conduct was improper; and (2) the conduct prejudicially affected his substantial rights so as to deprive him of a fair proceeding." *United States v. Horton*, 72 F. App'x 949, 950 (4th Cir. 2003) (citing *United States v. Golding*, 168 F.3d 700, 702 (4th Cir. 1999)).

Wright's claim that the Assistant United States Attorney ("AUSA") committed prosecutorial error with respect to the calculation of loss and restitution lacks merit. Pet'r's Mot. at 6-9. As discussed above, Wright and the government stipulated in the plea agreement to the loss amount used for purposes of sentencing and the restitution amount was based on the actual loss. *See supra* section III.A.2. Therefore, Wright has failed to demonstrate either that the AUSA's conduct was improper or that Wright was prejudiced so as to deprive her of a fair proceeding.

Wright also claims that the AUSA committed prosecutorial error by failing to bring a Rule 35 motion, claiming that the government led her to believe that more indictments would issue and that if Wright was the first to enter a plea, she would get a better deal. Pet'r's Mot. at 11-12. Wright

15

specifically asserts that no co-conspirators have been indicted and, thus, she has been wrongly denied the ability to further cooperate and receive a Rule 35 motion. *Id.* The plea agreement between Wright and the government expressly provides that the government "will make known to the Court at sentencing the full extent of the Defendant's cooperation, but the Government is not promising to move for departure pursuant to USSG § 5K1.1, 18 § U.S.C. § 3553(e), or Fed. R. Crim. P. 35." Plea Agreement at 6 ¶ 4.d. *See Williams v. United States*, No. 4:10-CR-00071-FL-1, 2012 WL 7456976, at *5 n.1 (E.D.N.C. Oct. 26, 2012) (rejecting claim that the government committed prosecutorial misconduct by failing to move for a sentencing reduction pursuant to Rule 35 where the plea agreement provided the government was not promising to do so), *adopted by* 2013 WL 705125 (E.D.N.C. Feb. 26, 2013). Wright testified at her arraignment that she understood the terms of her plea agreement and that no one had made any promises to her, outside of the plea agreement, in exchange for a guilty plea. Arraignment Tr. 18:21-19:12.

Moreover, at Wright's sentencing, the district court inquired as to why the co-conspirators were unindicted, and the government indicated that the other cases related to Wright's were being handled by the Middle District of North Carolina, but that the government had made a § 5K1.1 motion based on Wright's cooperation in connection with the prosecutions in the Middle District. Sentencing Tr. 2:23-3:9. The government recommended a "50% cut from the bottom of the guideline to a sentence of about 44 months" on the § 5K1.1 motion. *Id.* 13:9-14. The government did all that it agreed to do in the plea agreement and, therefore, Wright has failed to demonstrate either that the AUSA's conduct was improper or that Wright was prejudiced so as to deprive her of a fair proceeding.

Finally, Wright contends that the AUSA committed prosecutorial error by failing to "remove

16

behavior dates." Pet'r's Mot. at 13. Specifically, Wright asserts that during her arraignment the magistrate judge, with the consent of the AUSA and agent, agreed to correct the behavior dates stated in the plea agreement. *Id.* At the arraignment, it was discovered that the dates of the alleged conduct charged in the criminal information, August 10, 2006 to November 27, 2006, were incorrectly documented in the plea agreement as May 2005 to July 2005. Arraignment Tr. 24:21-26:19. However, the plea agreement was then amended to reflect the dates of the alleged conduct charged in the criminal information, August 10, 2006 to November 27, 2006. *Id.* 26:23-28:6; Plea Agreement at 4 ¶ 3.a(3). Furthermore, to the extent Wright is asserting error in the court's consideration at sentencing of relevant conduct outside the time frame of the conduct charged in the criminal information, Pet'r's Third Addendum at 1-3, "the court is not constrained by the time periods asserted in the criminal information when considering what conduct is properly characterized as relevant conduct." *United States v. Whittington*, 395 F. Supp. 2d 392, 394 (W.D. Va. 2005) (citing *United States v. Kennedy*, 32 F.3d 876, 890 (4th Cir. 1994) ("This broad concept of 'relevant conduct' includes activities that occurred before the date identified by the indictment as the starting date of the offense.")). Accordingly, Wright has failed to demonstrate that the AUSA's conduct was improper with respect to the dates of conduct as stated in the revised plea agreement or the relevant conduct utilized at sentencing.

C.   **Sentence Reduction for Post-Sentencing Rehabilitation**

Wright seeks, pursuant to *Pepper v. United States*, — U.S. —, 131 S. Ct. 1229 (2011), a sentence reduction for her completion of post-sentencing rehabilitation programming. Pet'r's First Addendum at 4-17. Wright misapprehends *Pepper's* holding, which does not provide an independent basis for the court to reduce Wright's sentence, but rather deals with what may be

considered when a case is remanded by an appellate court to the district court for resentencing. *See United States v. Susi*, 674 F.3d 278, 284 (4th Cir. 2012) (citing *Pepper*, 131 S. Ct. at 1250-51); *Oiler v. United States*, No. 5:12-CV-00952, 2013 WL 5574898, at *3 n.6 (S.D. W. Va. Oct. 9, 2013) (noting *Pepper* inapplicable where petitioner's sentence was not set aside and remanded for resentencing on appeal); *United States v. Sanders*, No. 5:09-CR-20-1-F, 2012 WL 3834927, at *1 (E.D.N.C. Sept. 4, 2012) (rejecting argument that the Supreme Court's approval in *Pepper* of post-sentencing rehabilitation as an appropriate consideration under 18 U.S.C. § 3553(a) entitled petitioner to a new sentencing hearing). Accordingly, *Pepper* provides no basis for relief where Wright's sentence has not been set aside and remanded on appeal.

## IV. CONCLUSION

Based on the foregoing, it is RECOMMENDED that the government's motion to dismiss [DE-103] be ALLOWED and Petitioner's § 2255 petition [DE-95] be DENIED.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days from the date of receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

SUBMITTED, this the 15th day of May 2014.

Robert B. Jones, Jr.
United States Magistrate Judge